# 14-2044-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT



LÉONE MEYER,

*Plaintiff-Appellant,*

*v.*

THE BOARD OF REGENTS OF THE UNIVERSITY OF OKLAHOMA,
THE UNIVERSITY OF OKLAHOMA FOUNDATION, INC., DAVID L. BOREN,
IN HIS CAPACITY AS THE PRESIDENT OF THE UNIVERSITY OF OKLAHOMA,

*Defendants-Appellees,*

*and*

AMERICAN ALLIANCE OF MUSEUMS, ASSOCIATION OF ART MUSEUM DIRECTORS,
DAVID FINDLAY JR., INC., WALLY FINDLAY GALLERIES (NEW YORK), INC.,
WALLY FINDLAY GALLERIES INTERNATIONAL DEVELOPMENT CORP.,
FINDLAY ART CONSIGNMENTS, INC., FINDLAY GALLERIES, INC.,
DFG ART CORP., DAVID FINDLAY GALLERIES, INC.,

*Defendants.*

———————————

*On Appeal from the United States District Court
for the Southern District of New York (New York City)*

## BRIEF FOR PLAINTIFF-APPELLANT

Pierre Ciric
THE CIRIC LAW FIRM, PLLC
*Attorneys for Plaintiff-Appellant*
17A Stuyvesant Oval
New York, New York 10009
212-260-6090

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

STATEMENT OF JURISDICTION...................................................................1

STATEMENT OF THE ISSUES.........................................................................2

STATEMENT OF THE CASE.............................................................................2

SUMMARY OF ARGUMENT ............................................................................4

ARGUMENT ........................................................................................................6

   I.  The District Court Judge Below Erred In Not Transferring The
      Case To The District Court For The Western District of Oklahoma .............6

     A. Lack of Personal Jurisdiction Does Not Bar
        Transfer Under 28 U.S.C. § 1406(a) ........................................................6

     B. Plaintiff Satisfies The Requirements For
        Transfer Under 28 U.S.C. § 1406(a) ........................................................9

       1. The "Interests of Justice" Warrants
          Transfer Rather Than Dismissal........................................................9

       2. Venue Is Proper In The U.S. District Court
          For The Western District of Oklahoma.............................................17

CONCLUSION ...................................................................................................19

# TABLE OF AUTHORITIES

## Cases

*Bakalar v. Vavra,* 619 F.3d 136 (2d Cir. 2010) ......................................................16

*Bigio v. Coca-Cola Co.*, 239 F.3d 440 (2d Cir. 2000) ............................................15

*Bolar v Frank,* 938 F.2d 377 (2d Cir. 1991) ..........................................................12

*Cameron v. Thornburgh,* 983 F.2d 253 (D.C. Cir. 1993) ..........................................8

*Corke v. Sameiet M.S. Song of Norway,* 572 F.2d 77 (2d Cir. 1978) .......................8

*Daniel v. Am. Bd. of Emergency Medicine*, 428 F.3d 408 (2d Cir. 2005) ...............12

*Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154 (S.D.N.Y. 2009) .......................9

*Dubin v. United States,* 380 F.2d 813 (5th Cir. 1967) ..............................................8

*Gaither v. Boone County Bd. of Ed.*, 465 F. Supp. 712 (S.D.N.Y. 1979) ................9

*Gibbons v. Fronton,* 661 F. Supp. 2d 429 (S.D.N.Y. 2009) ...............................8, 17

*Gibbs v. Hawaiian Eugenia Corp.,* 966 F.2d 101 (2d Cir. 1992) .............................9

*Gipromer v. SS Tempo*, 487 F. Supp. 631 (S.D.N.Y. 1980) .....................................9

*Goldlawr Inc. v. Heiman,* 69 U.S. 463 (1962) ................................................ 7, 8, 10

*Grosz v. Museum of Modern Art*, 772 F. Supp. 2d 473 (S.D.N.Y. 2010) ...............10

*Hilton v. Guyot*, 159 U.S. 113 (1895) .............................................................. 14, 15

*In re 1973 John Deere 4030 Tractor*, 1991 OK 79, 816 P.2d 1126 (1991) ............11

*In re Arbitration Between Int'l Bechtel Co, Ltd. & Dep't of Civ. Aviation of the Gov't of Dubai*, 300 F. Supp. 2d 112 (D.D.C. 2004) ...........................................15

*In re Holocaust Victim Assets Litig.,* 105 F. Supp. 2d 139 (E.D.N.Y. 2000) ..........16

*Internatio-Rotterdam, Inc. v. Thomsen*, 218 F.2d 514 (4th Cir. 1955) ....................8

*M. Shanken Communs., Inc. v. Variant Events, LLC*, 10 CIV. 4747 CM, 2010 WL 4159476 (S.D.N.Y. Oct. 7, 2010) ........................................................................7

*Mayo Clinic v. Kaiser*, 383 F.2d 653 (8th Cir. 1967) ................................................8

*Phillips v. Seiter*, 173 F.3d 609 (7th Cir. 1999) .....................................................12

*Porter v. Groat,* 840 F.2d 255 (4th Cir. 1988) ........................................................8

*Self v. M&M Chem. Co.,* 177 F.3d 977 (5th Cir. 1999) ...........................................8

*Taylor v. Love*, 415 F.2d 1118 (6th Cir. 1969) .......................................................8

*Thee v. Marvin Glass & Assoc.*, 412 F. Supp. 1116 (E.D.N.Y. 1976) ...................18

*Theilmann v. Ruthland Hosp., Inc.,* 455 F.2d 853 (2d Cir. 1972) ...........................9

*Tomchuck v. Union Trust Co.*, 875 F. Supp. 242 (S.D.N.Y. 1995) .........................9

*United States v. Portrait of Wally,* 663 F. Supp. 2d 232 (S.D.N.Y. 2009) .............15

*Unlimited Care, Inc. v. Visiting Nurse Ass'n of E. Massachusetts, Inc.,* 42 F. Supp. 2d 327 (S.D.N.Y. 1999) .......................................................................................8

**Federal Statutes**

28 U.S.C. § 1291 ......................................................................................................1

28 U.S.C. § 1332(a) ...........................................................................................1, 18

28 U.S.C. § 1391 .............................................................................................5, 6, 16

28 U.S.C. § 1406(a) ........................................................................................ passim

**State Statutes**

N.Y. C.P.L.R. § 214(3) (McKinney 2013) ............................................................10

## INTRODUCTION

This is an appeal from a judgment of dismissal issued by the Honorable Colleen McMahon in the United States District Court for the Southern District of New York on May 14, 2014 in the matter of *Meyer v. The Board of Regents of the University of Oklahoma, et al.*, S.D.N.Y. Docket No. 13-cv-3128.

## STATEMENT OF JURISDICTION

(A) The Southern District of New York had subject-matter jurisdiction based on diversity of the parties, 28 U.S.C. § 1332(a). Neither the diversity of citizenship nor the amount in controversy exceeding the jurisdictional amount is contested.

(B) The Court of Appeals for the Second Circuit has jurisdiction over this matter pursuant to 28 U.S.C. § 1291 because courts of appeals "shall have jurisdiction of appeals from all final decisions of the district courts of the United States."

(C) The District Court judge for the Southern District of New York issued a Memorandum Decision and Order on May 14, 2014 granting defendants' Motion to Dismiss. A 11.[1] Notice of Appeal was timely filed on June 5, 2014. A 11.

(D) The Memorandum Decision and Order on May 14, 2014 was a final order or judgment that disposed of all parties' claims.

---

[1] The Appellant's Appendix will be cited as "A___."

1

## STATEMENT OF THE ISSUES

The only issue presented is whether the court below erred in refusing to transfer the matter to the United States District Court for the Western District of Oklahoma, as requested by Plaintiff in her opposition to Defendants' Motion to Dismiss.

## STATEMENT OF THE CASE

Plaintiff-Appellant Léone Meyer ("Plaintiff") commenced the action on May 9, 2013 in the United States District Court for the Southern District of New York. A 3. An amended complaint was filed on January 10, 2014. A 8. Plaintiff commenced this action to recover possession of an oil painting titled "La bergère rentrant des moutons" (1886) by Camille Pissarro ("La Bergère"). A 14. The painting is currently on permanent display at the Fred Jones Jr. Museum of Art, an entity of the University of Oklahoma. A 14.

On March 26, 2012, Plaintiff's family discovered a blog post written by Marc Masurovsky, an expert historian in the field of Nazi-looted artwork, on the Holocaust Art Restitution Project's website discussing La Bergère. A 50. On December 12, 2012, Plaintiff, through her attorney, demanded the return of La Bergère from the University of Oklahoma. A 51. In a letter dated January 18, 2013, Defendant David L. Boren claimed the painting was in the custody of Defendant University of Oklahoma Foundation, Inc., instead of the original benefactor, the

University of Oklahoma. A 51. On May 9, 2013, Plaintiff filed a Complaint in the Southern District of New York, A 3, and subsequently filed her First Amended Complaint on January 10, 2014. A 8.

On February 7, 2014, Defendants-Appellees the Board of Regents of the University of Oklahoma, David L. Boren in his capacity as President of the University of Oklahoma, and the University of Oklahoma Foundation, Inc. (collectively "Oklahoma Defendants"), and Defendant David L. Boren in his individual capacity, moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b) for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim. A 77-116.

On March 7, 2014, in the Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, Plaintiff set forth reasons the motion to dismiss should be denied. In the alternative, Plaintiff requested that the case be transferred to the U.S. District Court for the Western District of Oklahoma if the Court found that Plaintiff failed to make a prima facie showing of personal jurisdiction. A 152, 186. The request to transfer the case in the alternative was not opposed in the Reply Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's First Amended Complaint filed on March 21, 2014. *See* A 187-201.

On May 15, 2014, the District Court issued its Memorandum Decision and Order dismissing the action. A 11. The Court limited its holding to the lack of personal jurisdiction over Oklahoma Defendants. A 203. However, the Court declined to transfer the case to the Western District of Oklahoma, as Plaintiff requested. *See* A 202-209.

On May 16, 2014, Plaintiff requested a conference with the District Court judge to discuss anew Plaintiff's request to transfer the case to the Western District of Oklahoma. A 210. On May 19, 2014, the District Court judge declined Plaintiff's request for a transfer because she lacked jurisdiction.[2] A210.

## SUMMARY OF ARGUMENT

The District Court judge erred when she denied Plaintiff's request to transfer the case to the U.S. District Court for the Western District of Oklahoma. Even if a court lacks personal jurisdiction, a court may still transfer a case to another district court under 28 U.S.C. § 1406(a). The legal standard for determining whether a case should be transferred is whether it is in the "interests of justice." Federal courts

---

[2] Prior to filing this appeal, the following defendants were voluntarily dismissed *without* prejudice: (1) Findlay Art Consignments, Inc., (2) Findlay Galleries, Inc., (3) Wally Findlay Galleries (New York), Inc., (4) Wally Findlay Galleries International Development Corp., and (5) David L. Boren in his individual capacity. Prior to filing this appeal, the following defendants were voluntarily dismissed *with* prejudice: (1) David Findlay Jr., Inc., (2) American Alliance of Museums, (3) Association of Art Museum Directors, (4) DFG Art Corp., and (5) David Findlay Galleries, Inc. The following are the only remaining active defendants at the time of this appeal: (1) the Board of Regents of the University of Oklahoma, (2) the University of Oklahoma Foundation, Inc., and (3) David L. Boren in his capacity as President of the University of Oklahoma.

have favored adjudication of claims on their merits rather than dismissal on procedural aspects. Dismissal is a harsh remedy that should only be used in extreme situations. In the present case the interest of justice weighs in favor of transferring the case. (1) If the case is re-filed instead of transferred, it is possible that the case will be time-barred depending on what constitutes "discovery" of a valid claim for La Bergère. (2) Plaintiff has brought a meritorious cause of action. This case cannot be considered a "sure loser" that would waste the time of another court if transferred. (3) Plaintiff filed her action in good faith in New York. At the time of filing, the court had personal jurisdiction over certain defendants,[3] who have since been dismissed for various reasons, and venue was proper under 28 U.S.C. § 1391. (4) Oklahoma Defendants will not be prejudiced or inconvenienced if transferred to the Western District of Oklahoma because they are all presently located in Oklahoma. Thus, the interest of justice would be served if the case is transferred instead of dismissed.

The case may be transferred to the U.S. District Court for the Western District of Oklahoma because it is a district where the case could have been

---

[3] The court had personal jurisdiction over David Findlay Galleries, Inc., Wally Findlay Galleries, Inc., Wally Findlay galleries International Development Corp., DFG Art Corp, David Findlay Art Consignment, Inc., Findlay Galleries because their principal places of business are located in New York and most were organized under and by virtue of the laws of the New York. The court had personal jurisdiction over American Alliance of Museums because it was engaged in a continuous and systemic course of business in New York. The court had personal jurisdiction over Association of Art Museum Directors because its principal place of business is located in New York.

5

brought. (1) The U.S. District Court for the Western District of Oklahoma possesses subject matter jurisdiction over the case based on diversity jurisdiction. (2) Oklahoma Defendants are subject to the personal jurisdiction of the U.S. District Court for the Western District of Oklahoma because they were subject to service of process in the State of Oklahoma and were properly served in Oklahoma at the time the action was commenced. (3) Venue is proper in the U.S. District Court for the Western District of Oklahoma under 28 U.S.C. § 1391(b)(2) because at the time the action was brought, La Bergère was, and still is, located in the Western District of Oklahoma.

## ARGUMENT

### I. THE DISTRICT COURT JUDGE BELOW ERRED IN NOT TRANSFERRING THE CASE TO THE DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

The District Court judge for the Southern District of New York abused her discretion when she dismissed this case instead of transferring it to the U.S. District Court for the Western District of Oklahoma.

### A. Lack of Personal Jurisdiction Does Not Bar Transfer Under 28 U.S.C. § 1406(a)

In the present case, the court below dismissed the action, holding it lacked personal jurisdiction over Oklahoma Defendants. After dismissing the case, the District Court judge incorrectly held that she could not transfer the case because she lacked jurisdiction over Oklahoma Defendants. However, it is well established

6

that a court's lack of personal jurisdiction does not deprive it of authority to transfer the claim to an appropriate venue.[4] Under 28 U.S.C. §1406(a), this case should have been transferred because it was not brought in the proper venue. "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

In *Goldlawr Inc. v. Heiman*, the Supreme Court held the language of § 1406(a) is broad enough to authorize the transfer of cases whether the court in which the case was filed had personal jurisdiction over the defendants or not. 369 U.S. 463, 466 (1962). The Court held:

> If by reason of the uncertainties of proper venue a mistake is made, Congress, by the enactment of s[ection] 1406(a), recognized that 'the interest of justice' may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by what the late Judge Parker aptly characterized as "time-consuming and justice-defeating technicalities." It would at least partially frustrate this enlightened congressional objective to import ambiguities into s[ection] 1406(a) which do not exist in the language Congress used to achieve the procedural reform it desired.

---

[4] The District Court judge has previously transferred a case to a different court because the Southern District of New York lacked personal jurisdiction. *See M. Shanken Communs., Inc. v. Variant Events, LLC*, 10 CIV. 4747 CM, 2010 WL 4159476 (S.D.N.Y. Oct. 7, 2010).

*Id.* at 467 (quoting *Internatio-Rotterdam, Inc. v. Thomsen*, 218 F.2d 514, 517 (4th Cir. 1955)). Circuit courts continuously cite *Goldlawr* as authority to transfer cases when there is no personal jurisdiction over the defendants. *See, e.g., Self v. M&M Chem. Co.,* 177 F.3d 977 (5th Cir. 1999); *Cameron v. Thornburgh,* 983 F.2d 253 (D.C. Cir. 1993); *Porter v. Groat,* 840 F.2d 255 (4th Cir. 1988); *Taylor v. Love*, 415 F.2d 1118 (6th Cir. 1969); *Mayo Clinic v. Kaiser*, 383 F.2d 653 (8th Cir. 1967); *Dubin v. United States,* 380 F.2d 813 (5th Cir. 1967).

In *Corke v. Sameiet M.S. Song of Norway*, the Second Circuit considered whether transfer was proper after the court below dismissed the action for lack of personal jurisdiction and denied the appellant's motion to transfer the case. 572 F.2d 77, 78 (2d Cir. 1978). The Second Circuit held that the power to transfer is not dependent on the personal jurisdiction of the transferor court. *Id.*at 79. Upon finding a basis to transfer the case, the Second Circuit reversed and remanded the case with directions to transfer the action to the proper district court. *Id.* at 81. Since the ruling, *Corke* is still used as authority in the Southern District of New York to transfer a case when there is no personal jurisdiction over the defendants. *See e.g., Gibbons v. Fronton,* 661 F. Supp. 2d 429 (S.D.N.Y. 2009); *Unlimited Care, Inc. v. Visiting Nurse Ass'n of E. Massachusetts, Inc.,* 42 F. Supp. 2d 327 (S.D.N.Y. 1999); *Tomchuck v. Union Trust Co*., 875 F. Supp. 242 (S.D.N.Y.

8

1995); *Gipromer v. SS Tempo*, 487 F. Supp. 631 (S.D.N.Y. 1980); *Gaither v. Boone County Bd. of Ed.*, 465 F. Supp. 712 (S.D.N.Y. 1979).

### B. Plaintiff Satisfies The Requirements For Transfer Under 28 U.S.C. § 1406(a)

#### 1. The "Interests of Justice" Warrants Transfer Rather Than Dismissal

The legal standard for determining whether a case should be transferred is whether it is in the "interests of justice" to do so. 28 U.S.C. § 1406(a). It is well settled that "dismissal is 'a harsh remedy to be utilized only in extreme situations.'" *Gibbs v. Hawaiian Eugenia Corp.,* 966 F.2d 101, 109 (2d Cir. 1992) (quoting *Theilmann v. Ruthland Hosp., Inc.,* 455 F.2d 853, 855 (2d Cir. 1972)(per curiam)). Federal courts have favored adjudication of claims on the merits, rather than dismissal on procedural grounds.

In *Deskovic v. City of Peekskill*, the court acknowledged that if the action were dismissed, the applicable statute of limitations may bar the plaintiff from re-filing some or all of its claims against the defendant. 673 F. Supp. 2d 154, 173 (S.D.N.Y. 2009). The court held, "[g]iven the potential statute of limitations issues that may arise if the action is dismissed, the Court finds that it is in the interest of justice to transfer, rather than to dismiss, this case." *Id.* at 174.

In the present case, the interest of justice weigh heavily in favor of giving Plaintiff an opportunity to have her action adjudicated on the merits in Oklahoma,

rather than punishing Plaintiff with the harsh penalty of dismissal. Additionally, transfer would not prejudice or inconvenience Oklahoma Defendants since they all reside or do business in the State of Oklahoma.

Should this action be dismissed, an attempt to re-file in the U.S. District Court for the Western District of Oklahoma may be time-barred. When a complaint is filed, it shows proper diligence on the part of the plaintiff and tolls the statute of limitations. *Goldlawr,* 369 U.S. at 467. An action is considered timely when subsequently transferred under § 1406(a). *See Id.*

Under New York law, the statute of limitations does not begin to run until after a demand is made to return property and the demand is refused by the defendant before the court. *See Grosz v. Museum of Modern Art*, 772 F. Supp. 2d 473 (S.D.N.Y. 2010). After a demand is made, a three-year statute of limitation on actions for conversion and replevin applies. *See* N.Y. C.P.L.R. § 214(3) (McKinney 2013). Plaintiff demanded the return of La Bergère on December 12, 2012. A 51. When Oklahoma Defendants refused in January 2013, A 51, Plaintiff filed her suit four months later, on May 9, 2013, well within the three-year statute of limitations.

Oklahoma follows the common-law "discovery rule" when the injury is unknown at the time of the wrongful transaction and allows the limitations in tort cases to be tolled until the injured person knows, or in the exercise of due

10

diligence, should have known of the injury. *In re 1973 John Deere 4030 Tractor*,

1991 OK 79, 816 P.2d 1126, 1132 (1991). The two-year statute of limitations on a

claim to recover personal property commences to run when a claim accrues, and a

claim accrues when the owner first could have maintained a claim to successful

conclusion. *Id.* at 1130. What constitutes "discovery" is a question of fact. *Id.* at

1128. It is unclear when the statute of limitations began to run on Plaintiff's claim

under Oklahoma's discovery rule. It is possible that an Oklahoma court may

determine that the statute of limitations began to run on March 26, 2012, when

Plaintiff's family first discovered a blog post discussing La Bergère. It is also

possible that an Oklahoma court may conclude that the statute of limitations did

not begin to run until Plaintiff was able to gather more information to maintain a

viable claim. Under New York's demand and refusal rule, it was irrelevant to plead

facts about the additional steps taken to investigate the claim, but such steps are

important to determine how to apply Oklahoma's discovery rule. There is no prior

case law in Oklahoma involving the discovery of Nazi-looted artwork, so there is

no guidance on which date Plaintiff could have first maintained the claim to

successful conclusion. If Plaintiff tries to re-file the case in the Western District of

Oklahoma, the court could determine that "discovery" took place on March 26,

2012, and not at a later date after further investigation. In this case, the court could

conclude that the two-year statute of limitations would have already run. However,

if the case is transferred to the U.S. District Court for the Western District of Oklahoma, the action would be timely under Oklahoma's two-year statute of limitations, even if the date of "discovery" happened on March 26, 2012, before Plaintiff's further investigation. In this case, the action would be filed well within the two-year statute of limitation because of the May 9, 2013, original filing date. It is in the interest of justice to transfer a case even if the plaintiff only *might* be time barred from initiating a new action. *See Bolar v Frank,* 938 F.2d 377, 380 (2d Cir. 1991).

Second, Plaintiff's cause of action is not a "sure loser." When a federal district court decides whether to transfer or dismiss a case over which it lacks jurisdiction, the court has limited power to review its merits. *Daniel v. Am. Bd. of Emergency Medicine*, 428 F.3d 408, 436 (2d Cir. 2005). If the case is a "sure loser," then the court where it was initially filed, which does not have jurisdiction, should dismiss the case rather than waste the time of another court. *Id.* (quoting *Phillips v. Seiter*, 173 F.3d 609, 611 (7th Cir. 1999)).

The District Court judge did not consider the merits of the case when dismissing the case, however, the case is certainly not a "sure loser" in the U.S. District Court for the Western District of Oklahoma. In May 1940, Nazis invaded France and set out to seize cultural objects and collections belonging to some of France's most prominent Jewish families, including Plaintiff's family. A 27.

12

Plaintiff's family had secured and registered their artwork, which included La Bergère, in a bank vault at Credit Commercial de France, but in February 1941, the Nazis breached the bank vault and seized the artwork. A 27. In April 1945, Plaintiff's father registered La Bergère with a French special commission responsible for registering claims for and retrieving Nazi looted artwork. A 30. In 1947, La Bergère was included in a registry of assets looted in France during World War II. A 32. The registry was disseminated throughout Europe and the Americas to inform governments, art institutions, art dealers and buyers of objects looted by the Nazis during World War II. A 30-31. In July 1946, the U.S. signed the "Tripartite Agreement" to uphold the policy of restitution of looted assets and the ensure that looted artwork would not reach countries that signed this agreement and that every effort would be made to return looted assets to their legitimate owners. A 31. As part of its obligation under this agreement, the U.S. government distributed the 1947 registry, which included La Bergère, to American museums, galleries, and universities. A 31-32. In 1951, Plaintiff's father discovered and sought the return of La Bergère from Christoph Bernoulli in Switzerland. A 35. After settlement negotiations failed, in 1953, Plaintiff's father filed a lawsuit in Switzerland. A 36. Plaintiff's father lost the case because, according to the court, he failed to prove Bernoulli's bad faith in acquiring La Bergère despite the French government's 1947 registry, which had been sent to Swiss federal authorities

13

advertising La Bergère as looted property. A 36. Following the 1953 judgment, Bernoulli tried to sell La Bergère back to Plaintiff's father, who refused to pay for a painting that was rightfully his own. A36. Unbeknownst to Plaintiff's father, La Bergère entered the U.S. in 1956 and Aaron and Clara Weitzenhoffer acquired the painting in or around January 1957. A 38-39. In 2000, Clara Weitzenhoffer's estate bequeathed La Bergère to the University of Oklahoma's Fred Jones Jr. Museum of Art. A 47. From 1945 until their death in 1970 and 1971 respectively, Plaintiff's father and mother exhaustively researched the whereabouts of La Bergère, as well as other paintings looted from their collection. A 47-48. Plaintiff was her father's only daughter and sole heir. A 17. Plaintiff was equally determined to recover her family's missing paintings and continuously performed an exceptional level of due diligence to search for the painting as evidenced in the First Amended Complaint. *See* A 48-50. It was not until March 26, 2012, that Plaintiff's family discovered a blog entry discussing La Bergère. A 50.

When she filed on May 9, 2013, Plaintiff brought her action within the two-year discovery rule, and at that time, the Southern District of New York had jurisdiction over some of the defendants. In addition, Plaintiff's claim is not barred by res judicata because res judicata is discretionary in the case of foreign judgments. *Hilton v. Guyot*, 159 U.S. 113, 164 (1895). "The theory often used to account for the res judicata effects of foreign judgments is that of comity." *In re*

14

*Arbitration Between Int'l Bechtel Co, Ltd. & Dep't of Civ. Aviation of the Gov't of Dubai*, 300 F. Supp. 2d 112, 117 (D.D.C. 2004). Courts may withhold comity if the plaintiff was not afforded "an opportunity for a full and fair trial abroad before a court of competent jurisdiction" or if the plaintiff shows "prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow the foreign judgment in full effect." *Hilton* at 202. Further, "[i]nternational comity requires recognition of foreign actions, decrees, and proceedings that do not conflict with interests of policies of the United States." *U.S. v. Portrait of Wally,* 663 F. Supp. 2d 232, 249 (S.D.N.Y. 2009) (citing *Bigio v. Coca-Cola Co.*, 239 F.3d 440, 454 (2d Cir. 2000)). Numerous cases and reports demonstrate and document the unfairness of Swiss courts in resolving art restitution cases after 1950. *See* A 175. Most notably, Pablo Crivelli, a member of a Swiss commission tasked with investigating assets transferred to Switzerland during and after World War II, issued a report concluding the Swiss Government's policies, the Swiss Federal agencies' censorship over information about looted artwork which illicitly entered Switzerland, the private sector's lack of cooperation, and the civil code rule made the Swiss legal system almost unassailable in the context of recovering looted artwork that was imported into Switzerland. A 174. Crivelli specifically cited the Swiss decision involving La Bergère as an example of such an outcome.

A 174. Further, the Second Circuit, in *Bakalar v. Vavra*, echoed Crivelli's concerns: "we simply note the obvious: Swiss law places significant hurdles to the recovery of stolen art, and almost 'insurmountable' obstacles to the recovery of artwork stolen by the Nazis from Jews and others during World War II and the years preceding it." 619 F.3d 136, 140 (2d Cir. 2010) (citing *In re Holocaust Victim Assets Litig.,* 105 F. Supp. 2d 139, 159 (E.D.N.Y. 2000)). For the aforementioned reasons, this case is not a "sure loser." It is not been disputed that La Bergère was stolen from Plaintiff's family, or that Oklahoma Defendants are currently in possession of La Bergère. Additionally, the case is not a "sure loser" because Oklahoma may adopt the *Bakalar* rule created by this Court, which disregarded Swiss law in Nazi-looted artwork cases. Therefore, to dismiss this cause of action would cause a harsh injustice on Plaintiff.

Third, Plaintiff filed her action in good faith in New York. Venue was proper pursuant to 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in the Southern District of New York, since La Bergère was acquired from an art gallery located in the Southern District of New York before being bequeathed to the University of Oklahoma. A 184-185. Venue was also proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(3), because multiple of the defendants, which have now been dismissed, were subject to the court's personal jurisdiction. A 20-26.

16

Fourth, Oklahoma Defendants will not be prejudiced or inconvenienced if the claims were properly permitted to be determined on their merits in the State of Oklahoma. In *Gibbons v. Fronton*, the court determined that transferring the case to the state where the defendants resided would not prejudice the defendants. 661 F. Supp. 2d 429, 436 (S.D.N.Y. 2009). Oklahoma Defendants are all principally located in and residents of the State of Oklahoma, A 17-20, and La Bergère is currently located and on display in Oklahoma. A 14. Accordingly, the transfer would not prejudice Oklahoma Defendants.

On the other hand, Plaintiff would suffer a substantial injustice and harshest penalty should her case be dismissed on statute of limitations expiration grounds. Thus, the interest of justice would not be served, nor would the Congressional intent of 28 U.S.C. § 1406(a) be met if the action were dismissed and not transferred.

### 2.    Venue Is Proper In The U.S. District Court For The Western District of Oklahoma

Under 28 U.S.C. § 1406(a) a case may be transferred to "any district or division in which it could have been brought." The Western District of Oklahoma is a district in which the present action 'could have been brought.'

This phrase has generally been construed to require that: (1) the transferee district possess subject matter jurisdiction over the case, (2) the defendant be amenable to the personal jurisdiction of the transferee district, and (3) proper venue

17

exists in the transferee district. *Thee v. Marvin Glass & Assoc.*, 412 F. Supp. 1116, 1119 (E.D.N.Y. 1976).

The U.S. District Court for the Western District of Oklahoma has subject matter jurisdiction over the case under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and all Defendants and the matter in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff is a citizen of France and Oklahoma Defendants are citizens of Oklahoma. A 17-20. The value of La Bergère alone exceeds $75,000. A 23.

Oklahoma Defendants were subject to service of process at the time the action was commenced and all were timely and properly served in Oklahoma. A 12.1-12.16. Therefore, neither personal nor subject matter jurisdiction is at issue.

28 U.S.C. § 1391 controls the proper venue in which a plaintiff may bring a civil action in district courts. Under 28 U.S.C. § 1391(b)(2), civil actions may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."

At the time the action was brought, La Bergère was, and still is, held by the Fred Jones Jr. Museum of Art in Norman, Oklahoma. Norman is located in the Western District of Oklahoma. Therefore, the action may be transferred to the U.S. District Court for the Western District of Oklahoma because "a substantial part of

the property that is subject of the action is situated" in the Western District of Oklahoma.

Additionally, a substantial and significant portion of the events giving rise to Plaintiff's claim occurred in the Western District of Oklahoma. Clara Weitzenhoffer's transfer of her interest and possession in La Bergère took place in the Western District of Oklahoma, where all Oklahoma Defendants are principally located. A 15. Therefore, the action may be transferred to the U.S. District Court for the Western District of Oklahoma because "a substantial part of the events or omissions giving rise to the claim occurred" in the Western District of Oklahoma.

Based on the foregoing, it is undisputable that Plaintiff has satisfied all the procedural requirements for transfer of this case to the U.S. District Court for the Western District of Oklahoma under § 1406(a) and there is no valid basis upon which to deny this request.

## CONCLUSION

In the interest of justice, the judgment of dismissal should be vacated and the matter transferred to the United States District Court for the Western District of Oklahoma.

Dated: New York, New York
     August 12, 2014

                    Respectfully Submitted,


                    /s/ Pierre Ciric
                    Pierre Ciric
                    Bar Number: 4828596
                    *Attorney for Appellant Léone Meyer*
                    THE CIRIC LAW FIRM, PLLC
                    17A Stuyvesant Oval
                    New York, New York 10009
                    Tel: (212) 260-6090
                    Fax: (212) 529-3647
                    Email: pciric@ciriclawfirm.com