# 14-2044-cv

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT



LÉONE MEYER,

*Plaintiff-Appellant,*

*v.*

THE BOARD OF REGENTS OF THE UNIVERSITY OF OKLAHOMA,
THE UNIVERSITY OF OKLAHOMA FOUNDATION, INC., DAVID L. BOREN,
IN HIS CAPACITY AS THE PRESIDENT OF THE UNIVERSITY OF OKLAHOMA,

*Defendants-Appellees,*

*and*

AMERICAN ALLIANCE OF MUSEUMS, ASSOCIATION OF ART MUSEUM DIRECTORS,
DAVID FINDLAY JR., INC., WALLY FINDLAY GALLERIES (NEW YORK), INC.,
WALLY FINDLAY GALLERIES INTERNATIONAL DEVELOPMENT CORP.,
FINDLAY ART CONSIGNMENTS, INC., FINDLAY GALLERIES, INC.,
DFG ART CORP., DAVID FINDLAY GALLERIES, INC.,

*Defendants.*

_____

*On Appeal from the United States District Court*
*for the Southern District of New York (New York City)*

## BRIEF FOR DEFENDANTS-APPELLEES

Thaddeus J. Stauber
Sarah Erickson André
Kristin M. Jamberdino
NIXON PEABODY LLP
*Attorneys for Defendants-Appellees*
437 Madison Avenue
New York, New York 10022
212-940-3000

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee the University of Oklahoma Foundation, Inc. (the "Foundation"), a private, not-for-profit corporation organized under the laws of Oklahoma, certifies that it is not a publicly held corporation, has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

Defendant-Appellee the Board of Regents of the University of Oklahoma is a state entity created by the Oklahoma Constitution, and Defendant-Appellee David L. Boren, in his capacity as President of the University of Oklahoma, is an individual; as such, they are exempt from the requirements of Rule 26.1.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ....................................................................iv

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................................1

STATEMENT OF THE CASE...................................................................2

    I.    Procedural History.............................................................2

    II.    Factual Background............................................................5

STANDARD OF REVIEW ......................................................................7

SUMMARY OF THE ARGUMENT .........................................................8

ARGUMENT ....................................................................................10

    I.    Meyer Waived the Opportunity to Move for A Transfer
        to Oklahoma .................................................................10

    II.    The District Court Did Not Abuse Its Discretion By Not
        Transferring this Action Sua Sponte ...................................13

        A.    A District Court May Transfer Actions Pursuant
            to 28 U.S.C. Section 1406(a), Where Transfer
            Furthers the Interests of Justice...................................14

        B.    Transfer of this Action Would Not Further the
            Interests of Justice..................................................16

            i.    Meyer Was Not Diligent in Pursuing Her Claim ..........20

ii.     Meyer Identifies No "Elusive Facts"
Causing Her to File in an Improper
Jurisdiction ................................................................21

iii.    The District Court Did Not Abuse Its
Discretion By Not Addressing the Transfer
of This Case ..............................................................21

C.     Dismissal is the Appropriate Outcome ....................................25

D.     Meyer's Interpretation of the District Court's
Post-Dismissal Letter Endorsement is Incorrect......................27

E.     Even if Plaintiff's Claim Is Not A "Sure Loser,"
Transfer Does Not Further the "Interests of Justice" ..............29

CONCLUSION .........................................................................................32

CERTIFICATE OF COMPLIANCE .........................................................33

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allianz Ins. Co. v. Lerner*, 416 F.3d 109 (2d Cir. 2005) .................................. 12, 13

*Board of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) .............................. 30

*Bogle-Assegai v. Connecticut*, 470 F.3d 498 (2d Cir. 2006) ...................... 10, 12, 13

*Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916
    (5th Cir. 1987) ......................................................................................... 8

*Calhoun v J. I. Case Co.*, 150 F. Supp. 189 (D. Ohio 1957) ................................. 28

*Coffey v. Van Dorn Iron Works*, 796 F.2d 217 (7th Cir. 1986) ............................... 7

*Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369 (2d Cir. 1966) ................. 15

*Corke v. Sameiet M. S. Song of Norway*, 572 F.2d 77 (2d Cir. 1978) .............. 15, 19

*Cornforth v. Univ. of Oklahoma Bd. of Regents*, 263 F.3d 1129
    (10th Cir. 2001) ...................................................................................... 30

*Cote v. Wadel*, 796 F.2d 981 (7th Cir. 1986) .............................................. 8, 24, 27

*Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408 (2d Cir. 2005) ..................... 29

*Daros v. Tokoyo*, No. 05CV775DLIVVP, 2005 WL 1229734
    (E.D.N.Y. May 23, 2005) ................................................................. 16, 24, 26

*Decker v. Dyson*, 165 Fed. Appx. 951 (3d Cir. 2006) ........................................... 8

*Deleski v. Raymark Indus., Inc.*, 819 F.2d 377 (2d Cir. 1987) .............................. 23

*Dongguk Univ. v. Yale Univ.*, 734 F.3d 113 (2d Cir. 2013) .................................. 12

*Dubin v. United States*, 380 F.2d 813 (5th Cir. 1967) ........................................ 9, 15

*Edelman v. Jordan*, 415 U.S. 651 (1974) ........................................................... 30

*Feldman v. L & M Mowing, Inc.*, No. 98 CV 4246SJ, 1999 WL 284983
 (E.D.N.Y. May 3, 1999) ................................................................19

*Gibbons v. Fronton*, 661 F. Supp. 2d 429 (S.D.N.Y. 2009).......................15, 19, 25

*Gipromer v. SS Tempo*, 487 F. Supp. 631 (S.D.N.Y. 1980)...................................15

*Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962)..............................15, 17, 19, 27, 29

*Greene v. United States*, 13 F.3d 577 (2d Cir. 1994) ..............................................10

*In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129 (2d Cir. 2008).............11, 12

*In re Ski Train Fire in Kaprun, Austria, on November 11, 2000*,
 224 F.R.D. 543 (S.D.N.Y. 2004)........................................................7, 19, 24

*Internatio-Rotterdam, Inc. v. Thomsen*, 218 F.2d 514 (4th Cir. 1955)...................16

*Kazlow v. Hade*, No. 89 Civ 5402 (SWK), 1990 WL 139030
 (S.D.N.Y. Sept. 14, 1990).........................................................................24

*King v. Russell*, 963 F.2d 1301 (9th Cir. 1992) ........................................................7

*M. Shanken Commc'ns, Inc. v. Variant Events, LLC*, No. 10 Civ. 4747 CM,
 2010 WL 4159476 (S.D.N.Y. Oct. 7, 2010)...............................................28

*Mayo Clinic v. Kaiser*, 383 F.2d 653 (8th Cir. 1967).............................................15

*Meyer v. Bd. of Regents of the Univ. of Oklahoma*, No. CJ-2014-729
 (Okla. 2014).................................................................................................5

*McGinty v. New York*, 251 F.3d 84 (2d Cir. 2001)....................................................30

*Minnett v. Time Warner*, 997 F.2d 1023 (2d Cir. 1993)............................................7

*Nichols v. G.D. Searle & Co.*, 991 F.2d 1195 (4th Cir. 1993) ...............7, 18, 23, 25

*NML Capital v. Republic of Argentina*, 621 F.3d 230 (2d Cir. 2010)....................12

*Norton v. Sam's Club*, 145 F.3d 114 (2d Cir. 1998)................................................11

*Pares v. Gordon*, No. 91 CV 1344 (KMW), 1992 WL 296437
    (S.D.N.Y. Oct. 8, 1992) .................................................................19

*Phillips v. Seiter*, 173 F.3d 609 (7th Cir. 1999) ..................................29

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981) ..................................8

*Porter v. Groat*, 840 F.2d 255 (4th Cir. 1988) .....................................15

*POSVEN, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391
    (S.D.N.Y 2004) ..........................................................................19

*Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*,
    689 F.2d 982 (11th Cir. 1982) ....................................................7

*Schiller v. Mit-Clip Co., Inc.*, 180 F.2d 654 (2d Cir. 1950) ....................15

*Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392 (2d Cir. 1992) ...............*passim*

*Stanifer v. Brannan*, 564 F.3d 455 (6th Cir. 2009) ...............................16

*T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145 (2d Cir. 2014) .........10

*Taylor v. Love*, 415 F.2d 1118 (6th Cir. 1969) .....................................15

*Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400 (2d Cir. 2006) ...........8

*Trujillo v. Williams*, 465 F.3d 1210 (10th Cir. 2006) .........................7, 22

*Untersinger v. United States*, 181 F.2d 953 (2d Cir. 1950) ....................28

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) .................10

*World Skating Fed'n v. Int'l Skating Union*, 357 F. Supp. 2d 661
    (S.D.N.Y. 2005) ...................................................................24, 27

*Zumft v. Doney Slate Co.*, 698 F. Supp. 444 (E.D.N.Y. 1988) ................25

**Statutes**

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1332(a) ..............................................................................1

28 U.S.C. § 1406 ..................................................................8, 16, 17, 18

28 U.S.C. § 1406(a) .......................................................................*passim*

51 Okla. Stat. 153(A) .........................................................................30

U.S. Const. amend. XI .......................................................................30

**Federal Rules**

Fed. R. Civ. P. 4(m) ...........................................................................25

Fed. R. Civ. P. 11 .....................................................................4, 21, 22

**Other Authorities**

3 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper,
        Federal Practice and Procedure § 3827 (3d ed.1998)...................16

Defendants-Appellees the Board of Regents of the University of Oklahoma, the University of Oklahoma Foundation, Inc., and David L. Boren, in his capacity as President of the University of Oklahoma (the "Oklahoma Parties") respectfully submit this brief in opposition to Plaintiff-Appellant Léone Meyer's appeal, premised upon the May 14, 2014, Decision and Order of the United States District Court for the Southern District of New York (Hon. Colleen McMahon, U.S.D.J.), failing to transfer the case when dismissing the action against the Oklahoma Parties.

## JURISDICTIONAL STATEMENT

Plaintiff claimed subject matter jurisdiction was present in the District Court based upon diversity of parties pursuant to 28 U.S.C. § 1332(a). This Court has jurisdiction over Plaintiff-Appellant's appeal pursuant to 28 U.S.C. § 1291, as the District Court dismissed the underlying action against the Oklahoma Parties without prejudice by Decision and Order dated May 14, 2014.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether the District Court abused its discretion by entering judgment without considering its authority to transfer the case, where Plaintiff failed to move for a transfer prior to the District Court's dismissal of the Oklahoma Parties.

1

## STATEMENT OF THE CASE

### I.    Procedural History

On May 9, 2013, Plaintiff-Appellant Léone Meyer ("Meyer") filed a
Complaint in the United States District Court for the Southern District of New
York, alleging five causes of action for (1) conversion; (2) replevin; (3)
constructive trust; (4) declaratory relief; and (5) restitution based on unjust
enrichment.  Docket ("Dkt.") No. 1.  On December 6, 2013, Defendants-Appellees
the Board of Regents of the University of Oklahoma, the University of Oklahoma
Foundation, Inc. (the "Foundation"), and David L. Boren in his capacity as
President of the University of Oklahoma (the "Oklahoma Parties") filed a motion
to dismiss Meyer's Complaint, asserting, *inter alia*, that none of the significant
events of the case occurred in New York and that the District Court lacked
personal jurisdiction over the Oklahoma Parties.  Dkt. No. 27.

In lieu of opposing the Oklahoma Parties' first motion to dismiss, on
January 10, 2014, Meyer filed a First Amended Complaint ("FAC") adding two
private trade association defendants, the American Alliance of Museums ("AAM")
and the Association of Art Museum Directors ("AAMD"), suing David L. Boren in
his individual capacity (in addition to his capacity as President of the University of
Oklahoma), and including two new breach of contract causes of action.  A 13-74.

The Oklahoma Parties moved to dismiss the FAC on February 7, 2014 ("Oklahoma Parties' Motion"), challenging the District Court's subject matter jurisdiction and personal jurisdiction, as well as venue and the sufficiency of the claims raised in the FAC, by arguing, *inter alia*, that (1) neither the general or long-arm statutes of New York gave rise to jurisdiction over the Oklahoma Parties; (2) there was a lack of subject matter jurisdiction over the University of Oklahoma and President Boren based upon the principles of sovereign immunity pursuant to the Eleventh Amendment to the United States Constitution; (3) Meyer failed to exhaust her administrative remedies on her tort claims under the Oklahoma General Tort Claims Act; (4) Meyer's claims were barred by the statute of limitations; (5) Meyer's claims were barred by *res judicata*, collateral estoppel, and international comity; and (6) Meyer's breach of contract claims failed to state a cause of action. A 75-145.

On March 7, 2014, Meyer filed her Opposition to the Oklahoma Parties' Motion, requesting that the District Court deny the motion and alternatively seeking leave to amend the FAC. A 146-86. In one sentence of the Opposition's Introduction, and one sentence in the Conclusion, without any supporting facts, legal argument, or citation to legal authority, Meyer requested as a "second alternative" that the case be transferred to the Western District of Oklahoma. A 152, 186.

3

On March 21, 2014, the Oklahoma Parties submitted a reply in support of the motion to dismiss. A 187-201. The reply further argued the lack of personal jurisdiction over the Oklahoma Parties, lack of subject matter jurisdiction over the tort claims against the Board of Regents and President Boren, and the other bases upon which the Oklahoma Parties' Motion should be granted. A 187-201.

On May 14, 2014, the District Court issued a Decision and Order (the "Order") granting the Oklahoma Parties' motion to dismiss on the ground that the court lacked personal jurisdiction over the Oklahoma Parties A 202-09. The Order stated that "[n]o allegations in the First Amended Complaint would render the Oklahoma [Parties] amenable to specific (long-arm) jurisdiction in New York." A 204. Referencing Federal Rule of Civil Procedure 11 three times, A 207, 209, the District Court judge noted that she "decide[d] the pending motion on the ground of personal jurisdiction to emphasize that this matter has no business being brought before this Court in the first place." A 208.

On May 16, 2014, Meyer's counsel faxed to the District Court a letter noting that Meyer intended to dismiss the remaining defendants. A 210-11.[1] Meyer also requested "a telephone conference with the Court to discuss a motion to transfer

---

[1] On December 6, 2013, Meyer filed a "Notice of Voluntary Dismissal," requesting that the District Court dismiss with prejudice defendant David Findlay Jr., Inc. Dkt. No. 22. On February 28, 2014, the parties stipulated to the dismissal of David L. Boren in his individual capacity. Oklahoma Parties' Supplemental Appendix ("SA") 8-9. On May 22 and 23, 2014, Meyer filed notices of voluntary dismissal, with prejudice, for all remaining parties. SA 29-32.

this case to the Western District of Oklahoma." A 210. The District Court responded on May 19, 2014:

> There is nothing to discuss by telephone. I granted a motion to dismiss. If you want to refile in Oklahoma – where you should have sued in the first place – file a new action. I am not going to "undismiss" the case against the Oklahoma [Parties] so I can transfer the case – I lacked jurisdiction over them.

A 210.

Meyer did not file a motion for reconsideration. On June 5, 2014, Meyer filed a Notice of Appeal of the District Court's refusal to transfer the case, seeking relief from this Court. A 212-13.

On June 11, 2014, Meyer filed a lawsuit in Oklahoma State Court against the Oklahoma Parties. *See Meyer v. Bd. of Regents of the Univ. of Oklahoma*, No. CJ-2014-729 (Okla. 2014). The Oklahoma complaint is factually identical to the First Amended Complaint, but asserts that Oklahoma is the proper venue for this action. Meyer has not yet served the Oklahoma Parties.

## II.    Factual Background

Meyer, a French citizen and resident of Paris, France, brought suit against numerous defendants, including the Oklahoma Parties, claiming that she is the rightful owner of a painting by Camille Pissarro entitled *La Bergére rentrant des moutons* ("Shepherdess Bringing in Sheep"), 1886, oil on canvas, 18 1/4 in. x. 15 in. (the "Painting"). A 14, 26-27. This piece was seized by Nazi forces during

World War II.  A 27-28.  After a search, Meyer's father ("Mr. Meyer") located the Painting in 1951.  A 35.

In 1952, Mr. Meyer attempted to negotiate the Painting's return to him.  A 36.  On January 8, 1953, Mr. Meyer brought a lawsuit in Basel, Switzerland, demanding the return of the Painting.  A 123-41.  On July 25, 1953, the Swiss court returned a verdict in favor of the then-owner, dismissing Mr. Meyer's claims.  A 36, 123-41.  After the lawsuit's conclusion, the then-owner of the Painting offered to sell it to Mr. Meyer, who refused.  A 36, 142-45.  Meyer made no specific allegations regarding any efforts by her or her predecessors to recover the Painting between 1960 and 1994.  A 47-48.  The Painting was exhibited at the David Findlay Galleries in New York as part of a one month exhibition in late 1956.  A 38-39.  On January 16, 1957, Aaron and Clara Weitzenhoffer purchased the Painting.  A 38-39.

On March 26, 2012, Meyer discovered from a blog entry that the Painting was on display at the Fred Jones, Jr. Museum of Art at the University of Oklahoma.  A 50-51.  The Painting had been part of a large bequest in 2000 by the Weitzenhoffer estate.  A 47.  On December 12, 2012, Meyer contacted the University of Oklahoma, claimed that she was the rightful owner of the Painting, and demanded that it be returned to her.  A 51.  On January 18, 2013, President Boren responded, informing Meyer that the Painting is in the custody of the

6

Foundation, not the University of Oklahoma.  A 51.  Without any further communication with the Oklahoma Parties, on May 9, 2013, Meyer filed the underlying suit in the District Court.

## STANDARD OF REVIEW

The sole question on appeal is whether a transfer of this action should have been ruled upon by the District Court.  As Meyer acknowledges in her opening brief, Appellant's Opening Brief ("AOB") 6, this Court is charged with determining whether the District Court's decision not address transfer of the case was an abuse of the District Court's discretion.  "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court."  *Minnett v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993); *see also Trujillo v. Williams*, 465 F.3d 1210, 1222-23 (10th Cir. 2006); *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993); *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-21 (7th Cir. 1986); *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc*., 689 F.2d 982, 985 (11th Cir. 1982) ("[T]he decision whether to transfer a case is left to the sound discretion of the district court and is reviewable only for an abuse of that discretion."); *In re Ski Train Fire in Kaprun, Austria, on November 11, 2000*, 224 F.R.D. 543, 547 (S.D.N.Y. 2004).

While the District Court did not – nor did it need to – rule as to the viability of transfer *sua sponte*, just as when a court denies a party's motion for a transfer under Section 1406(a), the appellate court's standard of review is the same: whether the trial court abused its discretion. *See, e.g., Decker v. Dyson*, 165 Fed. Appx. 951, 954 (3d Cir. 2006); *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987) (ruling that a district court did not abuse its discretion in failing to order *sua sponte* a transfer under § 1406). Although a district court's discretion is not unlimited, an appellate court can reverse the district court "only for a 'clear abuse of discretion,' implying a very limited scope of appellate review." *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)). Thus, it is Meyer's burden to demonstrate that the District Court abused its broad discretion by not transferring the action to Oklahoma. This Court is "free to affirm a decision on any grounds supported in the record, even if it is not one on which the trial court relied." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 405 (2d Cir. 2006).

## SUMMARY OF THE ARGUMENT

In her appeal, Meyer does not challenge the District Court's finding that it lacked jurisdiction over the Oklahoma Parties. Meyer instead asserts that when the District Court so ruled, it should have transferred the action to Oklahoma. As Meyer contemplates a potentially time-barred claim, she seeks a transfer of venue,

asserting for the first time that Oklahoma is the proper forum. Meyer waived this argument, however, by failing to raise it adequately when before the District Court.

Meyer cannot show that Judge McMahon abused her discretion in failing to transfer the action *sua sponte*. Meyer's counsel filed the lawsuit in New York to take advantage of procedural rules unique to New York, giving little consideration to the requirements of personal jurisdiction or venue. Meyer's counsel maintained that New York was the proper forum, even when fatal defects were identified through motion practice and correspondence among the parties. Meyer only now concedes what was evident long ago – that there is no meaningful connection between this action, the relevant parties, and New York. Meyer's jurisdictional position was not based on being misled by a defendant or because she lacked knowledge of an elusive fact; Meyer simply wanted to pursue her claims in New York, even if it was never the proper forum and the action "had no business being brought [in New York] in the first place." A 208.

Because the obvious jurisdictional flaws were easy to detect and just as easy to rectify, "allow[ing] a transfer in this case would reward plaintiff[] for [her] lack of diligence in choosing a proper forum and thus would not be in the interest of justice." *Spar, Inc. v. Info. Res., Inc.,* 956 F.2d 392, 394 (2d Cir. 1992); *see also Dubin v. United States*, 380 F.2d 813, 816 n.5 (5th Cir. 1967) ("It is obviously not 'in the interest of justice' to . . . aid a nondiligent plaintiff who knowingly files a

case in the wrong district."). As the District Court did not abuse its discretion in failing to transfer the action, this Court should decline Meyer's improper and untimely request to transfer the action to Oklahoma.

## ARGUMENT

## I.    Meyer Waived the Opportunity to Move for A Transfer to Oklahoma

"[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal," unless it is "necessary to remedy an obvious injustice." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 168 (2d Cir. 2014) (quoting *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994)); *see also Bogle-Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006) (quoting *Greene*, 13 F.3d at 586). "The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments available but not pressed below . . . waiver will bar raising the issue on appeal." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 124 n.29 (2d Cir. 2005) (quotation omitted).

On appeal, Meyer has shifted positions and advances arguments that were available when this action was before the District Court. Meyer never argued to the District Court that the action should (or even could) be transferred to another jurisdiction – she maintained throughout the litigation that the New York court had personal jurisdiction over the defendants and that significant relevant events in

New York made it the proper forum.  Meyer did not assert that an Oklahoma court could take jurisdiction over the Oklahoma Parties or that the subject of the lawsuit (the Painting) or events relevant to the Painting's chain of ownership warranted transfer of the action to Oklahoma.  Meyer made no reference to 28 U.S.C. § 1406(a) – the statute on which she now relies – in any submission to the District Court.

Meyer's only statement that resembles the argument she now presents was a sentence in the Introduction of the Opposition to the Oklahoma Parties' Motion to Dismiss, which stated:

> In the second alternative, should the Court find that Plaintiff fails to make out a prima facie showing of personal jurisdiction, Plaintiff respectfully requests that the case be transferred to the Western District of Oklahoma.

A 152.  This "second alternative" sentence is echoed in the conclusion.  A 186. These brief statements, unsupported by either law or facts, are not sufficient to preserve the issue for appeal.  *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132-33 (2d Cir. 2008); *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) (noting that "stating an issue without advancing an argument, or raising an issue for the first time in a reply brief" do not suffice to preserve an issue for appeal).[2]

---

[2] Meyer's Opposition to the Oklahoma Parties' Motion to Dismiss the First Amended Complaint does make occasional reference to Oklahoma law, asserting,

This Court retains discretion to consider arguments waived below because its waiver doctrine is prudential. *See NML Capital v. Republic of Argentina,* 621 F.3d 230, 239 n.7 (2d Cir. 2010); *In re Nortel Networks Corp. Securities Litig.,* 539 F.3d at 133; *Bogle-Assegai,* 470 F.3d at 504. Although this Court may exercise discretion to consider waived arguments where necessary to avoid an obvious or manifest injustice, "the circumstances normally 'do not militate in favor of an exercise of discretion to address . . . new arguments on appeal' where those arguments were 'available to the [parties] below' and they 'proffer no reason for their failure to raise the arguments below.'" *Bogle-Assegai,* 470 F.3d at 504 (quoting *Allianz Ins. Co. v. Lerner,* 416 F.3d 109, 114 (2d Cir. 2005)) (alteration and omission in original); *see also Dongguk Univ. v. Yale Univ.,* 734 F.3d 113, 129 (2d Cir. 2013).

On appeal, Meyer asserts for the first time that the Western District of Oklahoma is the proper forum, but offers no explanation for failing to make this argument to the District Court. Accordingly, this Court should decline to exercise

---

for example, that the Oklahoma Governmental Tort Claims Act does not bar Meyer's replevin claim. A 168-70. Such references to Oklahoma law, however, are in response to the Oklahoma Parties' affirmative assertion in the motion that Oklahoma substantive law, not New York law, would be relevant to the District Court's analysis. A 112-14. At no point did Meyer assert that the action belonged in Oklahoma.

its discretion to consider Meyer's waived argument.[3]  Moreover, this Court's refusal to reject Meyer's otherwise waived invitation will not result in an injustice. *See Bogle-Assegai*, 470 F.3d at 504; *Allianz Ins. Co.*, 416 F.3d at 114.  The District Court had the authority to transfer the action, despite finding that it lacked personal jurisdiction over the Oklahoma Parties, but it chose not to do so.  The District Court did not, however, abuse its discretion in dismissing, rather than transferring the action *sua sponte*, as there was no evidence that a transfer would further the interests of justice.  This is borne out by the record, which, as demonstrated below, makes evident that Meyer's resolute assertion that New York was the proper forum was premised solely on an unwavering determination to forum shop or, at the very least, an extreme lack of diligence.

## II.    The District Court Did Not Abuse Its Discretion By Not Transferring this Action *Sua Sponte*

Asserting on appeal that venue in Oklahoma is proper, Meyer contends that "there is no valid basis upon which to deny [her transfer] request."  AOB 19.  But this is not the test that Meyer must satisfy.  Even if the Court were to accept Meyer's assertion that she "has satisfied all the procedural requirements for

---

[3] Meyer asserts that "it is undisputable that Plaintiff has satisfied all the procedural requirements for transfer of this case to the U.S. District Court for the Western District of Oklahoma under § 1406(a) and there is no valid basis upon which to deny this request."  AOB 19.  Meyer's failure to clear the fundamental procedural hurdle of moving for a transfer – or, at the very least, providing the District Court with *some* factual or legal support for a transfer – is, in itself, a valid basis on which to deny Meyer's request.

transfer of this case to the U.S. District Court for the Western District of Oklahoma under § 1406(a)," AOB 19, she must demonstrate to this Court that transfer furthers the interests of justice. Moreover, Meyer must demonstrate that the District Court abused its discretion when it elected not to transfer the action to Oklahoma *sua sponte*.[4]  As demonstrated below, Meyer falls far short of clearing this hurdle. Meyer's failure to identify Oklahoma as the proper forum was the result of Meyer's intentional actions or failure to conduct proper diligence – not an "elusive fact," a reasonable mistake, or a misrepresentation by a defendant. Accordingly, the District Court did not abuse its discretion in ignoring Meyer's unsupported, one sentence, "second alternative" requests for a transfer, or in electing not to transfer the action *sua sponte*.

### A.     A District Court May Transfer Actions Pursuant to 28 U.S.C. Section 1406(a), Where Transfer Furthers the Interests of Justice

Meyer contends that when the District Court granted the Oklahoma Parties' Motion, it should have transferred the action to Oklahoma pursuant to 28 U.S.C. § 1406(a).  That statute provides:

---

[4] Meyer does not assert in the opening brief that the District Court abused its discretion by failing to transfer the action *sua sponte*.  As: (1) Meyer failed to move for a transfer, (2) a district court has the authority to transfer an action *sua sponte*, and (3) Meyer does not assert that the transfer request was otherwise properly before the District Court, the Oklahoma Parties assume that Meyer finds fault with the District Court's election not to invoke Section 1406(a) of its own accord.

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a); *see also Concession Consultants, Inc. v. Mirisch*, 355 F.2d 369, 371 n.3 (2d Cir. 1966) (noting that "where the motion asks only that the suit be dismissed, the court may properly, *sua sponte*, order it transferred"); *Schiller v. Mit-Clip Co., Inc.*, 180 F.2d 654, 655 (2d Cir. 1950).[5]

In *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962), the Supreme Court offered the following instruction on applying Section 1406(a):

> The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not . . . . If by reason of the uncertainties of proper venue a mistake is made, Congress, by the enactment of § 1406(a), recognized that "the interest of justice" may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by . . . "time-consuming and justice-defeating technicalities."

---

[5] In *Porter v. Groat*, 840 F.2d 255, 256 (4th Cir. 1988), cited by Meyer, AOB 8, plaintiffs formally moved to transfer the underlying case after defendants filed a motion to dismiss. *See also Corke v. Sameiet M. S. Song of Norway*, 572 F.2d 77, 78 (2d Cir. 1978) (where plaintiff had filed formal motion to transfer); *Taylor v. Love*, 415 F.2d 1118, 1119 (6th Cir. 1969) (same); *Mayo Clinic v. Kaiser*, 383 F.2d 653, 653 (8th Cir. 1967) (same); *Dubin*, 380 F.2d at 814 (same); *Gibbons v. Fronton*, 661 F. Supp. 2d 429, 430 (S.D.N.Y. 2009) (based upon plaintiff's motion to transfer); *Gipromer v. SS Tempo*, 487 F. Supp. 631, 632 (S.D.N.Y. 1980) (same). Here, no motion to transfer was ever made by Meyer.

369 U.S. at 466-67 (quoting *Internatio-Rotterdam, Inc. v. Thomsen*, 218 F.2d 514, 517 (4th Cir. 1955)). "The concept of the 'interest of justice' applies to plaintiff and defendant alike." *Daros v. Tokoyo*, No. 05CV775DLIVVP, 2005 WL 1229734, at *2 (E.D.N.Y. May 23, 2005). Thus, in considering whether a transfer would be in the "interest of justice," a court should consider the impact of the transfer on the defendant, not just the plaintiff. *See id.*

This Circuit has recognized that although Section 1406 "should be read liberally," it is not designed to assist a party "whose own failure to pursue its claim diligently . . . has resulted in a procedural bar." *Spar,* 956 F.2d at 393. In fact, "district courts often dismiss a case, rather than transfer it under Section 1406(a), if the plaintiff's attorney reasonably could have foreseen that the forum in which the suit was filed was improper and [the court decides] that similar conduct should be discouraged. Although a case does not have to be dismissed when this is the situation, a district court is unlikely to be reversed if it does choose to dismiss." *Stanifer v. Brannan*, 564 F.3d 455, 460 (6th Cir. 2009) (quoting 3 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3827 at 602-04 (3d ed.1998)).

**B.     *Transfer of this Action Would Not Further the Interests of Justice***

Should the Court choose to consider Meyer's waived request, there is no evidence in the record to indicate that transferring the instant case would further

16

the interests of justice. In *Spar*, this Court analyzed the parameters of "the interest of justice" and recognized that a transfer did not further these interests where the plaintiff knowingly chooses the wrong forum or otherwise exhibits a lack of diligence. *See* 956 F.2d at 394. In that case, the plaintiff sought to transfer a time-barred action from New York to Illinois, where the statute of limitations was longer. This Court affirmed the district court's denial of the transfer, because a transfer "would reward plaintiffs for their lack of diligence in choosing a proper forum." *Id.* The *Spar* court explained that the purpose of Section 1406 was to avoid "the injustice which ha[s] often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact." *Id.* (quoting *Goldlawr*, 369 U.S. at 466).

> The implication of the [*Goldlawr*] Court was that plaintiffs who were diligent in initiating suit should not forfeit their action as a result of venue quirks of which responsible plaintiffs would not necessarily have known.

*Id.* The inverse implication of *Goldlawr* is, then, "that where a plaintiff's attorney files in the wrong jurisdiction not 'because they . . . made an erroneous guess with regarding to an elusive fact,' but because he/she made an obvious error, transfer under section 1406 is inappropriate." *Nichols*, 991 F.2d at 1201-02 (quoting *Goldlawr*, 369 U.S. at 466).

The *Spar* plaintiff's venue choice was not premised on an elusive fact, but a failure to conduct basic diligence. *See* 956 F.2d at 394-95 ("[W]e note that a statute of limitations is far from an elusive fact unknown to a reasonable plaintiff – our system virtually mandates that a responsible plaintiff be aware of applicable limitations periods."). Because "[t]he facts and circumstances underlying [the plaintiff's] claim were plainly evident within New York's prescribed time frame," the plaintiff "had ample opportunity to bring this action within the limitations period." *Id.* at 395.

In addition, the *Spar* court found that the plaintiff's attempt to transfer the action was akin to impermissible forum shopping:

> Certainly, "a plaintiff already has the option of shopping for a forum with the most favorable law," before it makes a decision to initiate an action in a particular district. Once a plaintiff has commenced its action, however, its opportunity to search for a more conducive forum ordinarily is concluded. While § 1406 has been read to allow some plaintiffs to rectify their errant choice of forums, it should not operate automatically to give a plaintiff an additional opportunity to select the district of litigation. "The 'interest of justice' analysis is 'not a vehicle for resurrecting a claim lost because the plaintiff erred in [its] initial choice of forums.'"

*Id.* (citations omitted).

Following this Court's decision in *Spar*, courts reviewing a motion to transfer venue continue to analyze whether the plaintiff was diligent in pursuing a claim and whether the plaintiff's reason for bringing the case in the wrong forum is analogous to an "erroneous guess" about an "elusive fact" which prevents the

"expeditious and orderly adjudication" of the case on the merits, when gauging

whether transfer promotes the interests of justice. *See, e.g., Gibbons*, 661 F. Supp.

2d at 436 (quoting *Goldlawr*, 369 U.S. at 466 and *Corke*, 572 F.2d at 79); *see also*

*In re Ski Train Fire in Kaprun*, 224 F.R.D. at 548 ("Although the transfer statutes

are meant to serve plaintiffs who make erroneous guesses with regard to proper

venue and to allow plaintiffs in certain cases to overcome statute of limitations bars

in the transferee district, . . . they do not extend to protect plaintiffs whose own

failure to pursue their claims diligently has resulted in a procedural bar.") (internal

quotations omitted); *POSVEN, C.A. v. Liberty Mut. Ins. Co*., 303 F. Supp. 2d 391,

407-08 (S.D.N.Y 2004) ("If a plaintiff has ignored a clear jurisdictional bar in

filing suit in a particular forum, dismissal rather than transfer is often warranted,

especially if the plaintiff is engaging in forum shopping or some other form of

gamesmanship."); *Feldman v. L & M Mowing, Inc*., No. 98 CV 4246SJ, 1999 WL

284983, at *3 (E.D.N.Y. May 3, 1999) ("[D]ismissal may be warranted where the

plaintiff knowingly chooses the wrong forum or otherwise exhibits a lack of

diligence."); *Pares v. Gordon*, No. 91 CV 1344 (KMW), 1992 WL 296437, at *2

(S.D.N.Y. Oct. 8, 1992).  Meyer cannot show that a transfer of this case is in the

interests of justice.

### i. Meyer Was Not Diligent in Pursuing Her Claim

Here, there is little evidence that Meyer has been diligent in pursuing her claim.  Meyer was notified by the Oklahoma Parties through two motions to dismiss that the New York district court lacked personal jurisdiction over the Oklahoma Parties, that venue was improper, that Oklahoma law would apply to Meyer's claims, and that there was no meaningful connection between New York and the action itself, yet Meyer's counsel did nothing to cure or respond to these defects.[6]  Both motions to dismiss were filed before March 26, 2014, the date that Meyer contends the Oklahoma statute of limitations ran, AOB 11, yet Meyer's counsel did nothing, maintaining the position that New York was the proper venue. Meyer's counsel failed to file a protective lawsuit in Oklahoma before the two year statute of limitations ran, despite having been put on notice of the jurisdiction and venue defects.

---

[6] Rather than oppose the Oklahoma Parties' initial motion to dismiss, Meyer filed an amended complaint, adding little beyond two additional defendants (the AAM and the AAMD) as a last effort to create a connection to New York.  Counsel for these entities informed Meyer's counsel by letter on February 24, 2014, that both entities should be dismissed as:  (1) there were no contracts between the Oklahoma Parties and the AAM or AAMD that could have been breached, as Meyer claimed, and (2) none of the Oklahoma Parties have ever been members of the AAMD, which, unlike the AAM, is located in New York.  SA 12-24.  Both of these parties were voluntarily dismissed by Meyer, with prejudice, on May 22, 2014 – only fifteen days after counsel for the AAM and AAMD waived service.  SA 27-30. (The event description for Docket No. 52 states that the AAM waived service on or about May 8, 2014.  The document linked to Docket No. 52, however, is identical to Docket No. 53 (SA 27-28), which is, in fact, the AAMD's service waiver.)

### ii. Meyer Identifies No "Elusive Facts" Causing Her to File in an Improper Jurisdiction

Meyer fails to identify any "elusive fact" or an erroneous guess that misdirected Meyer to file suit in New York. Meyer has not asserted, for example, that she was ever unaware of the relevant parties to this action. Nor has Meyer asserted that any of the defendants concealed information that led Meyer's counsel to file in New York, rather than Oklahoma. Like the *Spar* plaintiff, Meyer seeks to avoid a statute of limitations defect through a transfer of venue. As noted above, this is not an elusive fact. *See* 956 F.2d at 394. In fact, Meyer's actions underscore the fact that she recognized Oklahoma as the proper forum. Meyer's counsel sent a demand letter to one of the Oklahoma Parties in Oklahoma. Meyer's counsel and son appeared before the Oklahoma Legislature to make a presentation concerning Meyer's claims. Meyer dismissed all New York parties (as well as all non-Oklahoma parties) from the underlying action, thereby acknowledging that this action has no connection to New York. Yet Meyer filed and maintained suit in New York – not in Oklahoma.

### iii. The District Court Did Not Abuse Its Discretion By Not Addressing the Transfer of This Case

The District Court questioned openly Meyer's counsel's diligence and good faith in bringing suit in New York, invoking Rule 11 *three times* in her order granting the Oklahoma Parties' motion to dismiss. A 207, 209. Meyer identified

21

no facts or case law to support the District Court having personal jurisdiction over the Oklahoma Parties, with the District Court noting that Meyer advanced challenges to a jurisdictional proposition "so well settled that it ought to violate Fed. R. Civ. P. 11 to make the argument!" A 207. The District Court also expressed concern that certain New York defendants – against whom the claims "appear on their face to be time-barred" – "were sued for no other reason than to site this action in New York, rather than in Oklahoma." A 208.

The District Court's Order contains no analysis of whether a transfer of this action to Oklahoma would further the interests of justice. In circumstances where a motion to transfer was filed and the district court dismissed that action without providing any reasons "for dismissing rather than transferring pursuant to § 1406(a)," the district court may have abused its discretion. *Trujillo*, 465 F.3d at 1223. However, that is *not* the situation here – as noted above, Meyer did not move for a transfer pursuant to Section 1406(a), nor did Meyer provide the District Court with *any* legal or factual support for a transfer. Thus, the District Court was not *asked* by Meyer to exercise her discretion and the Order's failure to address a transfer was not an abuse of discretion.

And like the *Spar* plaintiff, Meyer's counsel chose to file suit in New York in an attempt to forum shop, not because New York had any defensible connection to the relevant parties or to Meyer's claim. Meyer sought to avoid Oklahoma's

22

two year statute of limitations, triggered by the discovery rule. The FAC asserts that Meyer discovered the Painting's current location on March 26, 2012, from a blog entry, A 50-51, likely making Meyer's claim time-barred under Oklahoma law. By filing in New York, Meyer's counsel endeavored to revive a decades-old claim by invoking New York's "demand and refusal" rule, asserting that Meyer's claim is timely because Meyer's demand to the Oklahoma Parties was refused on January 19, 2013, well within New York's three year statute of limitations. The "interest of justice" is not furthered, but is instead obstructed, if Meyer is permitted to strategically evade Oklahoma law by knowingly filing in the wrong jurisdiction and then, when jurisdiction is naturally found to be lacking, to obtain a transfer. *See Spar*, 956 F.2d at 394-95.

Because Meyer's election to file suit in a court without personal jurisdiction was obvious and could have been easily avoided through the exercise of reasonable diligence, transferring this action to the U.S. District Court for the Western District of Oklahoma does not promote the interests of justice. *See id.* at 395; *Deleski v. Raymark Indus., Inc*., 819 F.2d 377, 381 (2d Cir. 1987) ("It is not in the 'interest of justice' to transfer this case to [another judicial district] upon appellant's tardy discovery that her complaint is time-barred."); *Nichols*, 991 F.2d at 1202 (affirming denial of motion to transfer where "[t]here [wa]s no question that plaintiffs' attorneys . . . could have reasonably foreseen when they brought their

claims that the Maryland district court lacked personal jurisdiction over their actions"); *Cote*, 796 F.2d at 985 (affirming denial of motion for transfer, finding "[e]lementary prudence would have indicated to [plaintiff's] lawyer that he must file a protective suit in Michigan because there was only a slight probability of obtaining personal jurisdiction in Wisconsin over the defendants"); *World Skating Fed'n v. Int'l Skating Union*, 357 F. Supp. 2d 661, 666 (S.D.N.Y. 2005) (denying transfer where case was filed in 2003 but plaintiff did not move to transfer until responding to defendants' motion to dismiss mid-2004, finding that "[p]laintiff seem[ed] to have been aware of the doubtful justification for jurisdiction in New York since the onset of this action, and ha[d] repeatedly raised the prospect of simply transferring this action elsewhere in order to cure these deficiencies"); *Daros*, 2005 WL 1229734, at *2 (denying transfer where there was a "complete lack of even a colorable basis for personal jurisdiction over the defendant in New York or proper venue in this District"); *In re Ski Train Fire in Kaprun*, 224 F.R.D. at 549 n.9 (denying motion to transfer made more than a year after court granted one defendant's motion to dismiss for lack of personal jurisdiction in New York); *Kazlow v. Hade*, No. 89 Civ. 5402 (SWK), 1990 WL 139030, at *2 (S.D.N.Y. Sept. 14, 1990) (dismissing case in which there was clearly no basis for venue in New York and the complaint contained "manifest defects").  Thus, the District

Court did not abuse its discretion by failing to respond to Meyer's two, unsupported one-line requests by transferring the action *sua sponte*.

### C.    Dismissal is the Appropriate Outcome

Meyer asserts that she will "suffer a substantial injustice and harshest penalty," AOB 17, if the action is not transferred, as she did not file suit in Oklahoma within the applicable two year statute of limitations.  The *Spar* court focused on the plaintiff's diligence, finding it inapposite whether the parties would be prejudiced – or not – by a transfer.  *Spar*, 956 F.2d at 396 (Walker, J., dissenting) ("The majority's view of Spar's transfer motion is anchored in the fact that Spar's lawyer was not diligent in analyzing New York's statute of limitations.").  Other courts have, however, considered the possibility of prejudice to the parties in calculating whether a transfer would be in the interest of justice. *See Gibbons*, 661 F. Supp. 2d at 434.

As courts within this circuit have recognized, dismissal is "a severe penalty." *See, e.g., Zumft v. Doney Slate Co.,* 698 F. Supp. 444, 446-47 (E.D.N.Y. 1988).  But this penalty is appropriate where, as here, the plaintiffs' counsel's obvious error "imposed substantial unnecessary costs on both the defendant and the judicial system." *Nichols*, 991 F.2d at 1201.  Meyer litigated this action in New York for more than a year, throughout which the District Court gave Meyer extensions of time to prosecute the case.  SA 1-2 (granting, at the expiration of Fed. R. Civ. P.

4(m)'s 120-day service deadline, Meyer's request for an additional 30 days); SA 3-7 (stipulation to allow Meyer additional time to file an amended complaint). Meyer's counsel filed an amended complaint, one opposition, two declarations, and numerous notices of voluntary dismissals. The Oklahoma Parties, however, have devoted considerable resources to defend themselves in a New York action in which they did not belong, filing numerous briefs (two motions to dismiss, one reply brief, and two requests for judicial notice) as well as supporting declarations.[7]

As Judge Posner recognized in *Cote*:

> In effect the district court penalized [the plaintiff] heavily for filing her suit in the wrong district: she is forever barred from bringing a suit that for all we know has great merit. If her mistake were one easy to commit, the penalty might be so disproportionate to the wrong that it would have to be reversed, as a clear abuse of discretion. But the mistake was elementary. Elementary prudence would have indicated to her lawyer that he must file a protective suit in [the proper jurisdiction] because there was only a slight probability of obtaining personal jurisdiction in [the current venue] over the defendants. The proper penalty for obvious mistakes that impose costs on opposing parties and on the judicial system is a heavy one . . . . [We] remind plaintiffs and their counsel that they must determine where the plaintiff can get personal jurisdiction over the defendant before, not after, the statute of limitations runs; otherwise they court disaster. If the result in the present case seems harsh, that is because the costs to [the plaintiff] are palpable where the benefits are largely invisible; but the benefits are not trivial; litigants and the public will benefit

_____

[7] Contrary to Meyer's assertions, AOB 17, transferring this action to Oklahoma will prejudice the Oklahoma Parties as they would be forced to litigate this action yet again. Thus, to the extent that "prejudice" factors into the court's analysis, transfer would not further the "interests of justice" for the Oklahoma Parties. *Daros*, 2005 WL 1229734, at *2.

substantially in the long run from better compliance with the rules limiting personal jurisdiction.

796 F.2d at 985 (citations omitted).

Recognition that the District Court did not abuse its discretion in failing to transfer the action to Oklahoma and the rejection of Meyer's eleventh hour transfer request could levy a harsh penalty on Meyer, but this is the proper penalty for counsel's attempt to forum shop and failure to act diligently to determine the proper forum, turning a blind eye to motions and supporting documentation that made evident that New York had no meaningful connection to any relevant party or claims. Because "Section 1406 should not be a panacea for lawyers who bring suits in jurisdictions where they know or should know that they do not belong," *World Skating Fed'n*, 357 F. Supp. 2d at 667, dismissal, rather than transfer, is the appropriate penalty.

### D. Meyer's Interpretation of the District Court's Post-Dismissal Letter Endorsement is Incorrect

Meyer improperly asserts that the District Court misconstrued the *Goldlawr* line of cases related to transfer and "incorrectly held that she could not transfer the case because she lacked jurisdiction over Oklahoma [Parties]." AOB 6. However, the District Court's order is not at all incongruent with the holdings of the *Goldlawr* line. Judge McMahon did not state that she *could not* transfer the case. Rather, in a May 19, 2014, endorsement to a letter submitted by Meyer on May 16,

2014, *after* dismissal had already been effected by the District Court's Order, Judge McMahon informed Meyer, "I am not going to 'undismiss' the case against the Oklahoma [Parties] so I can transfer the case." A 210. Meyer thus incorrectly characterizes Judge McMahon's response to Meyer's untimely, post-dismissal letter as a basis from which to appeal.

Notwithstanding the fact that the statement raised by Meyer is not part of the Order on appeal, Meyer's assertion that Judge McMahon misconstrued the law has no basis in fact as Judge McMahon has granted a motion to transfer after acknowledging that the court lacked jurisdiction over the defendants. *See, e.g., M. Shanken Commc'ns, Inc. v. Variant Events, LLC*, No. 10 Civ. 4747 CM, 2010 WL 4159476, at *8-9 (S.D.N.Y. Oct. 7, 2010) (McMahon, J.) (granting motion to transfer venue despite lack of jurisdiction over defendants, where both plaintiff and defendant had formally moved to transfer the action, and "there [was] no evidence that Plaintiffs' acted in bad faith in filing suit in this district," weighting the interests of justice in plaintiff's favor).[8]

---

[8] In limited circumstances, district courts have vacated a prior order of dismissal for improper venue and granted a transfer of the case under § 1406(a) to the district of proper venue. *See, e.g., Untersinger v. United States*, 181 F.2d 953, 956 (2d Cir. 1950); *Calhoun v J. I. Case Co*., 150 F. Supp. 189, 191 (D. Ohio 1957) (ordering a transfer under § 1406(a) and vacating a prior order of dismissal). But here, Meyer failed to properly raise the transfer request either before or after dismissal.

Meyer identifies no meaningful evidence that Judge McMahon misunderstood the *Goldlawr* line of cases – now or in the past. Thus, one could surmise that when Judge McMahon elected not to transfer the action to Oklahoma, she did so because transfer did not further the interests of justice.

### E. Even if Plaintiff's Claim Is Not A "Sure Loser," Transfer Does Not Further the "Interests of Justice"

Meyer asserts that the case "is not a 'sure loser,'" and that, therefore, "to dismiss this cause of action would cause a harsh injustice on Plaintiff." AOB 16; *see also* AOB 12 (quoting *Phillips v. Seiter*, 173 F.3d 609, 611 (7th Cir. 1999)). While a court is permitted to consider briefly the action's merits, this review does not factor into the "interests of justice" analysis such that it could weigh in favor of a transfer. Rather, it is intended to provide guidance on whether the action is so clearly flawed that transfer would be a waste of resources.

A court's limited jurisdiction "to decide whether to transfer or dismiss" a case over which it lacks jurisdiction includes "a power of limited review of the merits." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 436 (2d Cir. 2005) (quoting *Phillips*, 173 F.3d at 611). If "a peek at the merits," *Phillips*, 173 F.3d at 610, "reveals that the case is a sure loser in the court that has jurisdiction (in the conventional sense) over it, then the court in which it is initially filed – the court that does not have jurisdiction – should dismiss the case rather than waste the time of another court." *Id*. at 611. In other words, as applied here, if the action is

29

clearly doomed in the Oklahoma, then it would be a waste of judicial resources to transfer the action to Oklahoma, even if other factors support a transfer, and the action should be dismissed.

Plaintiff's action is a "sure loser." The Oklahoma Parties identified numerous fatal defects in Plaintiff's action, including the fact that they are not amenable to jurisdiction in *any* federal court. A 101-03. As agencies or instrumentalities of the State of Oklahoma, they are entitled to immunity under the Eleventh Amendment. *See* U.S. Const. amend. XI; *Board of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *McGinty v. New York*, 251 F.3d 84, 95 (2d Cir. 2001); *Cornforth v. Univ. of Oklahoma Bd. of Regents*, 263 F.3d 1129, 1131 n.1 (10th Cir. 2001).[9]

But even if this Court elects to look past the Oklahoma Parties' assertion of immunity from suit, the inverse principle articulated by Meyer – that if a case is *not clearly* doomed, that factor advances the "interests of justice" and weighs *in favor* of transfer – does not rationally follow, nor is it supported by case law. When calculating whether a transfer promotes the interests of justice, courts focus

---

[9] Oklahoma's Government Tort Claims Act ("OGTCA") does contain a limited waiver of sovereign immunity by rendering the state potentially liable for torts committed by its employees while acting within the scope of their employment. *See* 51 Okla. Stat. 153(A). But Meyer did not demonstrate that her claims fall within the scope of the OGTCA; nor did she exhaust her administrative remedies or follow the procedures required to bring a claim under the OGTCA. A 103-05.

on the plaintiff's diligence and reason for filing in the wrong jurisdiction – not the substance of the action.

As noted before the District Court, the Oklahoma Parties recognize the tragic history associated with such claims as those made by Meyer. But Meyer elected to file this action in a jurisdiction to which the Oklahoma Parties are not subject and without more than an initial letter addressed to the wrong defendant and outside Oklahoma's requisite procedures for notifying a state entity of a claim against it. And despite repeated admonitions to Plaintiff's counsel from the Oklahoma Parties and counsel to the AAM and AAMD that both the original and amended complaints contained fatally defective jurisdictional allegations, Meyer's counsel continued to pursue the claim in New York. The Oklahoma Parties will continue to investigate and review Meyer's claim in the appropriate fashion, but to validate Meyer's stratagem to forum shop without consequence would not further the interests of justice.

## CONCLUSION

For the reasons set forth above, the Oklahoma Parties respectfully request that this Court affirm the District Court's Order granting the Oklahoma Parties' Motion to Dismiss the First Amended Complaint and reject Meyer's waived and untimely request to transfer the action to the U.S. District Court for the Western District of Oklahoma.

Dated:       November 10, 2014
             New York, New York

                              Respectfully submitted,

                              NIXON PEABODY LLP

                    By:    /s/ Sarah Erickson André
                           Thaddeus J. Stauber
                           Sarah Erickson André
                           Kristin M. Jamberdino
                           437 Madison Avenue
                           New York, New York 10022
                           212-940-3000

                           *Attorneys for Defendants-Appellees*

32

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains 8,007 words, excluding the parts of

the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

this brief has been prepared in a proportionally spaced typeface using

Microsoft Word in Times New Roman, 14 point font.


Dated:          November 10, 2014
                New York, New York


                                Respectfully submitted,

                                NIXON PEABODY LLP

                    By:     /s/ Sarah Erickson André
                            Thaddeus J. Stauber
                            Sarah Erickson André
                            Kristin M. Jamberdino
                            437 Madison Avenue
                            New York, New York 10022
                            212-940-3000

                            *Attorneys for Defendants-Appellees*